UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PLANTBIKES, LLC; dba RUGGED CYCLES, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-108 |
| | § | |
| BIKE NATION, INC., *et al*, | § § | |
| Defendants. | § | |

**ORDER ON MOTION TO DISMISS
FOR LACK OF JURISDICTION**

On May 22, 2014, after jurisdictional discovery, Plaintiff Plantbikes, LLC d/b/a Rugged Cycles (Rugged Cycles) filed its First Amended Complaint (D.E. 44), asserting claims against Bike Nation, Inc. (Bike Nation), a corporation with which it had certain business dealings.  Rugged Cycles also asserts claims against First Pacific Holdings, Inc. (FPH) and Media Nation, Print, LLC (MNP) and others that are part of the Bike Nation corporate family.   Rugged Cycles alleges that FPH and MNP are involved in, and profiting from, Bike Nation's wrongful conduct.  The case was removed to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Before the Court is FPH and MNP's "Rule 12(b) Motion to Dismiss Plaintiff's Petition" (D.E. 7) in which they argue that this Court does not have personal jurisdiction over them.  For the reasons set out below, the motion (D.E. 7) is GRANTED IN PART and DENIED IN PART.

## THE CONTROVERSY

Rugged Cycles is in the business of developing, manufacturing, and selling bicycles that are intended to be more durable and dependable than ordinary bicycles. Among its design improvements are a drive train and airless tires that, for instance, address the problems of broken chains and flat tires.  Bike Nation is in the business of securing contracts with cities for the operation of bicycle rental businesses.  In particular, Bike Nation's business plan involves setting up various kiosks around the city that permit bicycle riders to rent bicycles for cross-city transportation, generally on a one-way basis.

According to Rugged Cycles, Bike Nation proposed using Rugged Cycles as the exclusive supplier of the bicycles necessary for Bike Nation's rental business.  To initiate their business relationship, Bike Nation and Rugged Cycles entered into a Confidential Disclosure Agreement (D.E. 44, pp. 32-34) and a Bicycle Supply Agreement (D.E. 44, pp. 35-43).  Rugged Cycles:  (1) hired an engineer to act as a go-between to help communicate the quality of Rugged Cycles' product to Bike Nation; (2) disclosed trade secret information to Bike Nation; and (3) incurred costs in increasing its manufacturing to meet the quantity of bicycles that Bike Nation contracted to buy and to reduce introductory pricing in anticipation of high volume sales.

Thereafter, according to Rugged Cycles, Bike Nation breached both the Confidential Disclosure Agreement and the Bicycle Supply Agreement by using Rugged Cycles' trade secrets to develop a "second generation" bicycle that it or another company would manufacture using Rugged Cycles' basic design features and component part suppliers.  Bike Nation did not place with Rugged Cycles the minimum order for bikes

that it had promised.  Bike Nation thus allegedly exploited Rugged Cycles' proprietary information to go into competition with Rugged Cycles.  Additionally, Rugged Cycles contends that Bike Nation is part of a corporate family designed to maintain Bike Nation as a low-profit, judgment-proof company that generates the basis for profits to be earned by related business entities.  In particular, Bike Nation allows FPH and MNP to profit by placing advertising on the bicycles it puts in service.

Rugged Cycles has alleged causes of action for breach of contract and fraud against Bike Nation.  The complaint alleges tortious interference with a contract against FPH and MNP.  In addition, as against Bike Nation, FPH, and MNP, Rugged Cycles asserts: misappropriation of trade secrets; violation of the Texas Theft Liability Act; and conspiracy to defraud Rugged Cycles of its trade secrets.  Last, Rugged Cycles alleges that Bike Nation, FPH, and MNP are all mere tools or conduits of each other or "alter egos," so that the liability of one is ascribed to all.

At issue here is whether Rugged Cycles has demonstrated that FPH and MNP are subject to this Court's personal jurisdiction.  The first issue Rugged Cycles raised was whether FPH and MNP had waived their jurisdictional challenge by permitting the entry of an order extending a preliminary injunction.  By separate Order, this Court has rejected that waiver theory.  D.E. 17.  Now, having had the benefit of jurisdictional discovery, the issue is whether FPH and/or MNP are alter egos of Bike Nation such that Bike Nation's contacts with the State of Texas are ascribed to them.

## DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over a defendant.  The plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction.  *Jones v. Petty—Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).  A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as permitted under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment.  *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

"Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 398 (5th Cir. 2009) (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice." *Id*. (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"Jurisdiction may be general or specific." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008). Specific jurisdiction exists when the plaintiff's claim against the nonresident defendant arises out of or relates to activities that the defendant

4 / 11

purposefully directed at the forum state.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).   In contrast, general jurisdiction requires the defendant to have maintained "continuous and systematic" contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

There is no question that Bike Nation has sufficient contacts in the State of Texas to support the assertion of personal jurisdiction against it.   Rugged Cycles does not appear to argue that FPH and MNP have sufficient contacts of their own in Texas.   Thus the question of personal jurisdiction over FPH and MNP is based on Rugged Cycles' alter ego theory—that the relationship between the Defendants and their conduct against Rugged Cycles is such that Bike Nation's contacts are ascribed to FPH and MNP.   In *Bridas v. Gov't of Turkmenistan*, 447 F.3d 411, 416–17 (5th Cir. 2006), the Fifth Circuit concluded that to establish an alter ego claim, a plaintiff must demonstrate (1) that an abuse of the corporate form occurred, and (2) that this abuse promoted a fraud or injustice that injured the plaintiff.

When a defendant raises an objection to the court's personal jurisdiction, the burden is on the plaintiff to make a prima facie showing that jurisdiction exists.  *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990).   A prima facie case may be established "by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the non-resident defendants."  *Caldwell v. Palmetto State Savings Bank*, 811 F.2d 916, 917–18 (5th Cir. 1987) (per curiam).

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the plaintiff's uncontroverted allegations and resolve any factual disputes in the plaintiff's favor. *Stripling v. Jordan Production Co*., 234 F.3d 863, 869 (5th Cir. 2000) (internal citation omitted).  Once the plaintiff satisfies its burden to establish a prima facie case of jurisdiction, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Central Freight Lines, Inc. v. APA Transport Corp.,* 322 F.3d 376, 384 (5th Cir. 2003).  Even in the realm of alter ego allegations, only a prima facie showing is necessary at the preliminary Rule 12(b)(2) stage. *See Hargrave v. Fibreboard Corp*., 710 F.2d 1154, 1161 (5th Cir. 1983) (noting that the standard for alter ego jurisdiction is less stringent than that for alter ego liability; finding the alter ego evidence in that case insufficient to sustain jurisdiction).

### B.  Assertions and Evidence of Alter Ego

As a preliminary matter, the Court observes that Rugged Cycles initially sued Media Nation Print, LLC.  While the evidence produced in connection with this jurisdictional challenge has included references to "Media Nation," those references are not specifically to "Media Nation Print."  There is credible controverting evidence that, while registered as a California limited liability company, Media Nation Print never operated in any capacity.  D.E. 33.  Instead, Rugged Cycles' evidence reflects some involvement by Media Nation Enterprises, LLC or Media Nation Outdoor, LLC, both of which have now been joined in this lawsuit.  D.E. 44.

Because the evidence is insufficient to show that Media Nation Print was involved in the events at issue or acted as the alter ego of Bike Nation, the Court GRANTS IN PART the motion to dismiss (D.E. 7) for lack of jurisdiction as to Media Nation Print, LLC.  Because Media Nation Enterprises, LLC and Media Nation Outdoor, LLC are not joined in the motion to dismiss, the Court will not further address the jurisdictional issue as to any Media Nation entity.

Among the allegations of the complaint (D.E. 44), Rugged Cycles asserts that Bike Nation and FPH are part of a corporate family formed by, wholly owned by, and controlled by, Navin Narang (Narang) and Bradley M. Barlow (Barlow) (¶¶ 14, 15, 112). Rugged Cycles' evidence supports this.  Narang is the sole shareholder and sole director of FPH.  D.E. 32, p. 1; 48-1, p. 18; 48-3, pp. 19-25.  Narang admitted to being an officer of Bike Nation and FPH and appeared as the corporate representative for the purposes of deposition of both.  D.E. 48-1, p. 6; D.E. 48-1, p. 7.  Narang and Barlow are the only officers or directors of the two entities and they make all the major decisions for them. D.E. 48-1, pp. 9-10, 13, 21; 48-3, pp. 2-11; 48-4, pp. 4-5; 48-5, p. 9; 48-5, p. 13; 48-6, pp. 5-6.

Dave Campbell, a former President and CEO of Bike Nation testified that he acted at the direction of Narang and Barlow.  D.E. 48-7, p. 1.  Campbell produced emails indicating that Angela Meyer, Executive Vice President of FPH, was tasked with administrative responsibilities for Bike Nation and, further, that she could not complete those tasks because "the partners" would not fill her in on the details.  D.E. 48-7, p. 2; 48-10, pp. 17-19.

Narang and Barlow are also the only signatories on the Bike Nation bank accounts.  D.E. 48-1, p. 12.  Narang initially paid Campell his Bike Nation salary through FPH and "Media Nation" bank accounts.  D.E. 48-7, pp. 1-2.  Later, when the checks were issued through the Bike Nation account for salary or other expenses, the money funding the Bike Nation account came from "Media Nation" or FPH.  *Id.*  In particular, a three million dollar loan to "Media Nation" was used to pay Bike Nation expenses.  *Id.*

The businesses share a single office address (¶ 8) and resources related to leasing the same premises, along with certain accounting services.  D.E. 48-1, pp. 18-19; 48-5, p. 10; 48-6, pp. 6, 8; 48-7.  While Narang denied that FPH and Bike Nation do business at the same address, he admitted that they had used the same address and the business of both is conducted wherever he is because he is essentially FPH and so FPH is located wherever he is.  D.E. 32, pp. 1-2.  FPH supplied the initial capital funding for Bike Nation gratuitously.  D.E. 48-1, p. 19.  D.E. 48-3, pp. 16-17.  As Rugged Cycles alleges, they operate as a single business enterprise, manipulating their respective assets and liabilities to benefit themselves at the expense of their creditors or other businesses associating with them (¶¶ 54, 113-14).

Barlow personally appeared in Corpus Christi, Texas to tour Rugged Cycles' facilities, witnessed its manufacturing processes, took pictures, and learned of Rugged Cycles' ongoing research and development plans (¶ 30).  This information has been used, contrary to the agreements between Bike Nation and Rugged Cycles, to benefit FPH, Narang, and Barlow by enabling them to use Rugged Cycles' design and processes without remuneration to Rugged Cycles and while setting up a competing manufacturing

process.  Specifically, Campbell testified that Narang made the decision for Bike Nation to breach the Bicycle Supply Agreement and obtain similar bikes through other manufacturers, shipping Rugged Cycles' bikes to manufacturers in Korea and Portland for the purpose of duplicating Rugged Cycles' design.  D.E. 48-7, p. 3.

More specifically, Bike Nation's rental business plan calls for the provision of bikes in a manner that does not generate a profit for the rental business, but allows FPH and "Media Nation," along with Narang and Barlow, to profit by supplying the means for generating advertising income using space available on the bikes' baskets (¶¶ 40-44, 72). As part of that plan, the bicycles must be manufactured at the lowest cost possible and Bike Nation is using Rugged Cycles' protected trade secrets, component manufacturer pipeline, and manufacturing processes to reduce costs and maximize profits for FPH and its related Media Nation businesses (¶¶ 49-51).  Narang and Barlow, controlling all of the entities involved, had Bike Nation breach its agreements with Rugged Cycles for the benefit of FPH, while leaving Bike Nation judgment-proof (¶¶ 52-54, 97, 100, 107, 114).

Campbell produced emails demonstrating that Narang, using his email account for FPH, in coordination with "Media Nation," worked up promotional materials on Bike Nation kiosks to get advertising business to spend money to advertise there.  D.E. 48-10, pp. 20-27.  Suppliers of parts that were manufactured for Bike Nation presented their invoices to Media Nation Enterprises and Narang and Barlow had to approve all payments.  D.E. 48-10, pp. 9-12.

**C. The Allegations and Evidence Are Sufficient to Sustain Jurisdiction**

Uncontroverted allegations are taken as true and conflicts in the jurisdictional facts are construed in favor of Plaintiff, Rugged Cycles. *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219-20 (5th Cir. 2012).  The Court finds that, under this less stringent standard applicable to alter ego jurisdiction, Rugged Cycles' allegations are sufficient to state a prima facie case of alter ego in that it alleges sufficient facts that, if true, would establish that FPH has used Bike Nation as a mere tool or conduit to benefit itself or other members of its corporate family without regard to the financial independence and business integrity of Bike Nation.  Rugged Cycles' evidence supports its allegations and further demonstrates a prima facie case of alter ego whereby FPH used Bike Nation to enrich itself by wrongfully using the trade secret information and product development of Rugged Cycles.  While FPH and Bike Nation have offered controverting evidence, primarily in the form of Narang and Barlow's denial of blurred corporate boundaries, that evidence is insufficient to eliminate any factual question on the matter. According to the standard of review, then, the Court must construe the evidence in favor of alter ego jurisdiction.

When the facts support the plaintiff's alter ego theory, the exercise of personal jurisdiction over the entity without minimum contacts of its own is consistent with due process concerns for fairness and reasonableness.  *See generally, Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).   In an alter ego scenario, "the

jurisdictional contacts of one are the jurisdictional contacts of the other . . . ." *Patin, supra*.

The uncontroverted factual allegations and the evidence submitted establish a prima facie case that the separate entities are operated as a unified business to evade an obligation or justify a wrong.  The entities' claim of limited liability based on their separate existence will work an injustice as to Rugged Cycles.  This is sufficient to support alter ego jurisdiction.  *See Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013); *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008); *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986).

## CONCLUSION

As set out above, the Court finds that the evidence is insufficient to sustain jurisdiction against Media Nation Print, LLC and the Court GRANTS IN PART the Rule 12(b) Motion to Dismiss Plaintiff's Petition (D.E. 7) as to the allegations against Media Nation Print, LLC.  The Court DENIES IN PART the motion as it pertains to Defendant First Pacific Holdings, Inc.

ORDERED this 26th day of June, 2014.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE